Filed 4/17/23 (unmodified opinion attached)

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| HAMILTON AND HIGH LLC et al., <br><br> Plaintiffs and Appellants, <br><br> v. <br><br> CITY OF PALO ALTO, et al., <br><br> Defendants and Respondents. | H049425 <br> (Santa Clara County <br> Super. Ct. No. 20CV366967) <br><br> ORDER MODIFYING OPINION <br> AND DENYING PETITION FOR <br> REHEARING <br> [NO CHANGE IN JUDGMENT] |

THE COURT:

It is ordered that the opinion filed on March 20, 2023, be modified as follows:

On page 44, in the first full paragraph, add a footnote at the end of the second sentence that reads: "As the City's adoption of the May 2020 five-year findings occurred *more than one year* after the end of the 180-day period, we have not been asked to and do not decide whether section 66001(d)(2)'s requirement that five-year findings be made "in connection with" the annual public information findings required by section 66006, subdivision (b), might be satisfied on different facts." Renumber all subsequent footnotes.

On page 44, in the first full paragraph, add two sentences at the end of the last sentence. The two sentences read: "The amount of the refund owed to plaintiffs, and the

manner in which the refund should be made (§§ 66001(d)(2), 66001, subd. (e)) are not before us.  We leave determination of those issues to the trial court in the first instance."

On page 51, in the first full paragraph of the disposition, delete footnote 14.

There is no change in the judgment.  The petition for rehearing is denied.

_____

Danner, J.

_____

Bamattre-Manoukian, Acting P.J.

_____

Wilson, J.

**H049425**
*Hamilton and High LLC et al. v. City of Palo Alto et al.*

| | |
|---|---|
| Trial Court: | Santa Clara County Superior Court<br>No. 20CV366967 |
| Trial Judge: | Hon. Cynthia C. Lie |
| Counsel for Plaintiffs and Appellants<br>Hamilton and High LLC, The Keenan<br>Family Trust and Charles J. Keenan: | David P. Lanferman<br>Rutan & Tucker, LLP |
| Counsel for Defendants and<br>Respondents City of Palo Alto and<br>City Council of the City of Palo Alto: | Rick W. Jarvis<br>Jarvis Fay LLP<br>Molly Stump<br>Terence Howzell<br>Office of the City Attorney, City of Palo<br>Alto |

**H049425**
*Hamilton and High LLC et al. v. City of Palo Alto et al.*

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| HAMILTON AND HIGH LLC et al., | H049425 |
| Plaintiffs and Appellants, | (Santa Clara County Super. Ct. No. 20CV366967) |
| v. | |
| CITY OF PALO ALTO, et al., | |
| Defendants and Respondents. | |

In this appeal, we consider the application of the Mitigation Fee Act (Gov. Code, § 66000 et seq.[1] (Act)) to the City of Palo Alto (City or Palo Alto)'s refusal to refund "in-lieu parking fees" to plaintiffs, developers who paid the fees years earlier as a condition of approval of a building project. Plaintiffs contend the City failed to make certain five-year findings statutorily required by section 66001, subdivision (d), of the Act and is therefore required to refund their unexpended fees.

The City counters that the in-lieu parking fee, charged when the developer elects not to provide parking directly, is not a "fee" subject to the Mitigation Fee Act. Consequently, the City contends that the five-year finding and refund provisions set forth in section 66001, subdivision (d), do not apply, and the City has no obligation under the Act to return the fees.

---

[1] Unspecified statutory references are to the Government Code.

In addition to this principal claim, the City makes a number of alternative arguments. It maintains that, even if the Act does apply, plaintiffs' claim for relief is barred by the statute of limitations and lacks a statutory basis. The City also contends that it complied with the Act's requirements by belatedly adopting five-year findings. Finally, the City asserts that plaintiffs have not satisfied section 65010, subdivision (b), a "harmless error" provision applicable to parts of the Government Code.

We conclude that the City's imposition of in-lieu parking fees in connection with plaintiffs' development project is subject to the Mitigation Fee Act, and plaintiffs' action is not time-barred. We decide that the City's failure to timely make five-year findings under section 66001, subdivision (d) with respect to the parking fund at issue triggers the refund provision of the Act for the unexpended parking fees paid by plaintiffs. Finally, we determine section 65010, subdivision (b), does not require that plaintiffs make an independent showing of prejudice for a violation of section 66001, subdivision (d).

We reverse the judgment of the trial court and remand with directions to enter a new judgment granting the mandate petition directing the refund of plaintiffs' unexpended fees in accordance with applicable statutory provisions, granting the cause of action for declaratory and injunctive relief, and dismissing the cause of action for equitable relief.

## I. FACTS AND PROCEDURAL BACKGROUND[2]

A. *The City of Palo Alto In-Lieu Parking Fees and Parking Fund*

In 1985, the Palo Alto City Council (city council) adopted an ordinance which established the "Commercial Downtown (CD)" zoning district and created detailed parking regulations set forth in the Palo Alto Municipal Code (municipal code or code). These regulations included "in-lieu parking provisions" (capitalization omitted). These

---

[2] These facts are taken from the largely undisputed evidence presented at the bench trial and summarized in the trial court's statement of decision, including those exhibits subject to judicial notice.

provisions allowed for "payment of an in-lieu monetary contribution to the city to defray the cost" of new, off-site parking spaces in an assessment district for "sites which would otherwise be precluded from development due to parking constraints." (Palo Alto Mun. Code, former § 18.48.100(d).)

In 1995, the city council adopted Ordinance No. 4256, which recognized the need to further address parking demand and mitigate insufficient parking facilities in downtown Palo Alto (downtown). Ordinance No. 4256 added chapter 16.57 to the municipal code to establish an in-lieu parking fee for new, nonresidential development in the "University Avenue parking assessment district" (capitalization omitted) as an alternative to satisfying downtown parking requirements. (Ordinance No. 4256, adopted Jan. 17, 1995, § 1B; see Palo Alto Mun. Code, ch. 16.57.) Ordinance No. 4256 provided that the purpose of the in-lieu parking fee was "to establish a mechanism for funding the provision of parking to serve new, nonresidential developments which are not able to meet the parking requirement" set forth in the code. (Ordinance No. 4256, § 1(E).) It specified that the in-lieu fees are to "be used to finance the construction of new parking facilities to meet the increased parking demand caused by new nonresidential developments." (*Id*., § 1(F).)

The municipal code defines " '[f]ee' " for purposes of chapter 16.57 as "a payment in lieu of the provision of required parking spaces." (Palo Alto Mun. Code, ch. 16.57.020(d).) Chapter 16.57 creates a special fund, the "University Avenue parking assessment district in-lieu parking fund . . . into which all fees, and any interest thereon, shall be deposited" (parking fund). (*Id*., § 16.57.050.) The parking fund must "be maintained as a separated capital facilities account in a manner to avoid any commingling of the fees with other revenues, funds or accounts of the city." (*Ibid*.)

The City requires new, nonresidential development to provide off-street parking facilities "for new uses and enlargements of existing uses, proportional to the need created by each use, in order to alleviate traffic congestion." (Palo Alto Mun. Code,

3

§ 18.52.010.) The code establishes minimum off-street parking requirements for the University Avenue parking assessment district. (*Id.*, § 18.52.040) New commercial development in the University Avenue parking assessment district may meet these requirements by providing on-site or off-site parking spaces, or "by payment of an in-lieu monetary contribution to the [C]ity to defray the cost of providing such parking." (*Id.*, § 18.52.070; see also *id.*,§ 16.57.010 et seq.) The option to pay the in-lieu parking fee is not available in all development scenarios but only where specified criteria exist due to site or other physical constraints. (*Id.*, § 18.52.070(d).) In those cases, building permit applicants may "pay a fee for each required onsite parking space that they do not provide for their development projects, due to site constraints, in the Commercial Downtown (CD) district." (City of Palo Alto Office of the City Auditor, Audit of Parking Funds, Dec. 15, 2015.)

The City calculates in-lieu parking fees based on the projected cost of one new parking space, which includes land acquisition, construction, and administrative costs. The municipal code provides for the initial calculation and later recalculation (to reflect actual design costs based on an awarded construction contract) of the in-lieu parking fee. (Palo Alto Mun. Code, § 16.57.030(a), (b).)

The City's fiscal year "begin[s] on the first day of July each year and end[s] on the last day of June of the subsequent year." (Palo Alto Mun. Code, § 2.28.010.) The municipal code provides for annual review by the city council of the "uses proposed for expenditure of the moneys in the [parking] fund." (*Id.*, § 16.57.070.) City staff has periodically submitted "five-year findings" on the parking fund, consistent with the Mitigation Fee Act's reporting requirements for development impact fees. (See generally § 66000 et seq.) However, the relevant chapter of the City's municipal code does not include a provision related to the five-year reporting requirement of section 66001, subdivision (d) (hereafter, section 66001(d)). (See Palo Alto Mun. Code, ch. 16.57.) As

4

plaintiffs' principal claims against the City are based on its alleged violation of section 66001(d), we examine the provision in detail below.

Following adoption of Ordinance No. 4256, in the fiscal year that ended on June 30, 1996, the City collected $231,400 in in-lieu parking fees. Between 1995 and 2003, the City collected over $1.6 million in such fees, which largely went toward the construction of two downtown parking garages. From 2003 through May 2012, the City did not collect in-lieu parking fees due to the availability of parking exemptions during that time. Between 2012 and 2015, in-lieu parking fees collected in connection with five development projects were paid into the parking fund. The collected fees totaled $4,455,750 and included plaintiffs' payment in 2013 of $972,000 (later reduced to $906,900). The parking fund had a positive balance of unexpended fees for the fiscal year that ended on June 30, 2014, through the fiscal year that ended on June 30, 2020. The record shows that the parking fund has continuously had a positive balance of unexpended fees since the fiscal year that ended on June 30, 1996.

B. *Plaintiffs' 2013 Payment of In-Lieu Parking Fees*

In 2013, plaintiffs Hamilton and High LLC, the Keenan Family Trust, and Charles J. Kennan, III (aka Chop Keenan) (collectively, plaintiffs) obtained city approval to develop a mixed-use building at 135 Hamilton Avenue in downtown Palo Alto (the property). The property is located within the City's University Avenue parking assessment district.

The City approved the development of the property, subject to numerous conditions of approval. Two of these conditions addressed parking requirements and development impact fees. Condition No. 8 required plaintiffs to comply with the City's parking requirements, which called for 40 parking spaces. Condition No. 9 required plaintiffs to pay development impact fees, estimated at more than a half of a million dollars, prior to issuance of the project's building permits. In December 2013, plaintiffs paid the City $1,560,475 in impact fees for the property, including $972,000 in in-lieu

5

parking fees (equivalent to 16 off-street parking spaces). Following a 2015 audit and other corrections, the City issued refunds of $4,460 and $60,460, bringing the total in-lieu parking fees plaintiffs have paid to $906,900.

C. *Proposed Development of the 375 Hamilton Avenue Downtown Garage*

In June 2014, the city council authorized staff to proceed with strategies to improve parking supply for the downtown University Avenue district, including use of the estimated $4 million in the parking fund balance as of the end of the 2014 fiscal year. The city council approved plans to construct a new downtown parking garage at 375 Hamilton Avenue (Hamilton garage), and designated and transferred $1.3 million from the parking fund for that purpose.

In February 2019, following the design review and commission of an environmental impact report (EIR) for the Hamilton garage, staff recommended that the city council adopt a resolution certifying the EIR, approve various related land use actions, and authorize a contract with the selected vendor for design services. The staff proposal budgeted $29.1 million for the garage, which included $6.8 million in in-lieu parking fees. However, the project stalled after a public hearing in February 2019 in which some citizens and councilmembers expressed concerns about the cost, environmental impacts, and need for the proposed garage.

The city council voted at the February 2019 public hearing to certify the EIR and approve the architectural review for the Hamilton garage but did not approve contracts to proceed with its additional design and development. Instead, city council directed city staff to return to the policy and services committee "with a parking management strategy and options to address [d]owntown parking needs." The council provided no timeline for submission of this information to the council.

The City's subsequent annual capital budgets continued to reflect prospective development of the Hamilton garage without a specific timeline. As of the filing of this appeal, the City had not adopted any plan to proceed with the Hamilton garage.

6

D. *The City's Five-Year Findings for the Parking Fund*

The Mitigation Fee Act imposes certain requirements on cities and other local agencies when they impose fees "as a condition of approval of a development project." (§ 66001, subd. (a).)  Among these requirements, the city or agency must make findings every five years where such fees have been collected but not yet expended.  (§ 66001(d).)  We examine the requirements of the Act in detail, *post*.

Historically, the City treated the in-lieu parking fee as subject to the requirements of the Act.  City staff reports, submitted to the city council in 2003, 2009, and 2014, addressed the parking fund in connection with the Mitigation Fee Act's annual reporting and five-year reporting requirements.  In the 2003 report, city staff explained that the Act applied to the parking fund for the University Avenue parking assessment district but asserted that because all in-lieu parking fees in the fund were received in the prior fiscal year (2002), no findings were required for them.

In the 2009 and 2014 reports, city staff recommended that the city council make findings for the unexpended University Avenue in-lieu parking fees and stated that failure to do so could potentially obligate the City to refund the fees.  The city council adopted the recommended five-year findings in January 2009 and January 2014 (for the fiscal years that ended on June 30, 2008, and June 30, 2013, respectively).

The City made its next set of five-year findings in a resolution adopted on January 22, 2019, for the fiscal year that ended on June 30, 2018 (Resolution No. 9816, hereafter January 2019 five-year findings).  The January 2019 five-year findings addressed various transportation and traffic impact fees but omitted any mention of the parking fund.  Consequently, the City did not make five-year findings for the unexpended fees in the parking fund for the fiscal year that ended on June 30, 2018.

In January 2020, Chop Keenan requested that the City refund the in-lieu parking fees, with interest, that plaintiffs had paid in December 2013 in connection with the development of the property at 135 Hamilton Avenue.  Keenan's letter stated that a

7

refund was "required under state law" because it had been more than five years since the fees were imposed and collected, and the City had "not used those fees for parking facilities nor provided the findings and public accounting required by Government Code sections 66001 and 66006."

The City, through its city attorney, denied the request. The City's letter, dated February 24, 2020, stated the request for a refund was "untimely" and the parking in-lieu fees were "currently committed to the construction of the" downtown parking garage, based on the city council's certification of the EIR and approval of land use actions in February 2019.

Plaintiffs responded in a letter dated April 27, 2020, providing a detailed timeline regarding plaintiffs' payment of " 'impact fees' " in December 2013, including those characterized by the City as " 'University In-Lieu Parking Fees,' " and the legal basis for their claim. Plaintiffs asserted that their refund request was "valid and timely" and requested that the City reconsider its position.

On May 11, 2020, following plaintiffs' demand for a refund, the city council adopted a resolution making additional five-year findings under section 66001(d), for the fiscal year that had ended on June 30, 2019.[3] (Resolution No. 9887, hereafter May 2020 five-year findings).

The May 2020 five-year findings included recitals and findings in connection with the parking fund and its anticipated use to construct a garage "pending further discussion

---

[3] The staff report accompanying the draft of Resolution No. 9887 provides this explanation for the failure to make findings in 2019: "Staff has recently revised the procedure used to calculate fund balances for the purposes of the findings the City is required to adopt under Government Code section 66001. This change will generally increase the amount stated it [*sic*] the resolution adopting such findings. Under the former methodology, it did not appear that findings were required and therefore a resolution was not prepared in December 2019/January 2020. The revised methodology would, however, require findings." The report does not specify the "procedure" change that resulted in the requirement for new findings. At oral argument, the City suggested these findings had been made in response to plaintiffs' threat of litigation.

8

by the City Council regarding downtown parking management." The city council acknowledged that "under Chapters 16.57 and 18.18 of the Palo Alto Municipal Code, the City has collected a fee known as the 'University Avenue Parking In-Lieu Fee' for the purpose of constructing public parking spaces within the University Avenue parking assessment district to serve the parking needs of the district created by the developments that paid the fees." Further, "[t]he sum of $6,117,748 represents the most recent audited total of fees collected pursuant to Chapter 16.57 that remain unexpended, together with accrued interest thereon ('the unexpended [] University Avenue Parking In-Lieu Fee funds')." The May 2020 findings did not distinguish the fees that had been in the parking fund for more than five years from those that had been deposited within the past five years.

E. *Plaintiffs' Action For Refund of the Unexpended In-Lieu Parking Fees*

On May 22, 2020, plaintiffs filed this action against the City. The combined petition for writ of mandate and complaint (collectively, petition and complaint) sought mandamus, declaratory, and injunctive relief based on the alleged failure of the City and city council (together, defendants) to provide timely or complete public accountings or findings for the in-lieu parking fees after the city council voted in February 2019 to "abandon" plans for construction of the downtown parking garage.

In the mandamus cause of action (Code Civ. Proc., § 1085), plaintiffs alleged that defendants failed to comply with their mandatory duties to refund the unexpended in-lieu parking fees after failing to make the public reports and findings required by sections 66001 and 66006 of the Mitigation Fee Act. Plaintiffs further alleged that defendants' unlawful retention of the in-lieu parking fees warranted declaratory, injunctive, and equitable relief. The City generally denied the allegations in the petition and complaint. The parties stipulated to a briefing schedule and hearing date for a writ hearing and bench trial.

In their points and authorities, plaintiffs asserted that the City failed to provide timely and legally adequate findings under the Mitigation Fee Act justifying the retention of the in-lieu parking fees.  In its opposition, the City asserted multiple independent reasons that plaintiffs were not entitled to a refund of the in-lieu parking fees, including, that (1) the in-lieu parking fee is not subject to the Mitigation Fee Act's five-year finding requirement; (2) the City's five-year findings issued in January 2019 did not include the in-lieu parking fees because those fees had not yet been held for five years; (3) this action was not filed within the one-year statute of limitations applicable to a claim for penalty or forfeiture, under the reasoning set forth in *County of El Dorado v. Superior Court* (2019) 42 Cal.App.5th 620, 625 (*El Dorado*); and (4) the City's adoption of five-year findings in May 2020 adequately complied with the requirements of section 66001 and was supported by substantial evidence.

On September 7, 2021, the trial court issued its final statement of decision.  The court denied relief as to both the petition for writ of mandate and the complaint for declaratory and other relief.  First, the trial court rejected plaintiffs' argument regarding the applicable statute of limitations under Code of Civil Procedure sections 343 or 338.  The court instead followed the reasoning of the appellate court in *El Dorado*, concluding that the obligation to refund fees under section 66001(d) for failure to adopt adequate five-year findings constitutes a penalty or forfeiture and is therefore subject to the one-year statute of limitations under Code of Civil Procedure section 340, subdivision (a).

Next, the trial court found, as "a separate and independent basis" for denying the petition, that the City's in-lieu parking fee does not come within the "narrow statutory definition[]" of a fee subject to the five-year findings requirement of section 66001(d).  The court reasoned that, unlike the parking fee at issue in *Walker v. City of San Clemente* (2015) 239 Cal.App.4th 1350 (*Walker*), the in-lieu parking fee provides an "optional alternative to compliance with City requirements for developer-constructed parking" and is therefore not imposed as a " 'condition of approval' " within the meaning of  section

10

66001. The court decided that the availability of the election to provide parking or pay an in-lieu fee removes the in-lieu parking fee from the statutory definition of a "fee" or " 'exaction' " with the meaning of section 66000 and makes it more akin to a traditional land use regulation.

Recognizing that its resolution of the principal issues would be subject to de novo review on appeal, the trial court addressed the merits of the Mitigation Fee Act claim "in the interest of judicial economy in the event of reversal." The court assumed, for this purpose, both the applicability of section 66001(d) to the in-lieu parking fee and the timeliness of plaintiffs' claim. It concluded that the city council's adoption of the May 2020 five-year findings (Resolution No. 9887) was untimely as a matter of law and could not be cured by remand. The court also doubted the adequacy of the City's 2020 five-year findings, noting in a footnote that the belated findings were "questionable" given the lack of specificity regarding the planned expenditures. The court agreed with the City, however, that its transfer of $1.3 million from the parking fund in fiscal year 2016 for planning and design costs was not improper and thus concluded that any refund required under section 66001 would be limited to the "unexpended funds" from plaintiffs' December 2013 fee payment. Regarding the application of a harmless error standard (§ 65010), the court found that the City had offered "no authority" for its assertion that the doctrine of harmless error should apply to any error or omission in its findings. Finally, the trial court rejected plaintiffs' non-statutory claim for equitable restitution, finding that the "present evidentiary record" did not support a finding that the City had "wholly failed to proceed" or had "effectively abandoned its plans to use the fee proceed[s] to construct parking."

In accordance with the statement of decision, the trial court entered judgment in favor of the City. Plaintiffs timely appealed.

11

## II. DISCUSSION

Plaintiffs contend the trial court erred as a matter of law in deciding three key issues underlying the judgment. First, plaintiffs argue that the court erred in concluding the in-lieu parking fee is exempt from the requirements of the Mitigation Fee Act. Second, plaintiffs assert that the court mischaracterized the gravamen of the action in ascertaining the cause's accrual date and relied on inapt case authority in reaching its conclusion that plaintiffs' action was time-barred under the one-year statute of limitations for penalty actions. Third, plaintiffs maintain the trial court abused its discretion by denying restitution despite the City's de facto abandonment of the Hamilton garage and refusal to refund the fees that it collected for the purpose of constructing new parking in the University Avenue parking district. Plaintiffs assert that each of these erroneous rulings serves as an independent basis for reversal, which plaintiffs contend should result in reversal of the judgment and remand with directions to mandate the refund of their unexpended in-lieu parking fees.

The City disagrees with plaintiffs' legal analysis and urges this court to uphold the judgment in the City's favor for the reasons stated in the trial court's statement of decision. In the event this court declines to do so, the City disputes the merits of plaintiffs' refund claim and asserts that plaintiffs have not attempted to show prejudice, as required by the Government Code's "harmless error" provision (§ 65010, subd. (b)) (hereafter, § 65010(b)) for matters coming under title 7 (Planning and Land Use).

This court sought supplemental briefing on whether section 65010(b) applies to this action. In response, plaintiffs contend it does not. Plaintiffs argue that section 65010(b) applies only where a court is asked to " 'hold invalid or set aside' " an action of a public agency, whereas here the court is asked to enforce an express statutory directive to refund unexpended fees. Plaintiffs maintain that applying the harmless error standard in this context would effectively nullify the Legislature's express specification of a refund remedy under section 66001(d). The City counters that section 65010 applies to

12

procedures under the Mitigation Fee Act and dictates that any remedy for an alleged error (such as untimely findings) must be interpreted consistent with section 65010(b)'s standard of prejudice.

We consider each of these arguments below, beginning with the statutory framework for plaintiffs' claims.

A. *Statutory Framework:  Mitigation Fee Act*

The Mitigation Fee Act applies to a monetary exaction imposed by a local agency as a condition of approval of a development project to defray public facility costs related to the project.  (§§ 66000, subd. (b), 66001.)  The Legislature passed the Act " 'in response to concerns among developers that local agencies were imposing development fees for purposes unrelated to development projects.' "  (*Ehrlich v. City of Culver City* (1996) 12 Cal.4th 854, 864 (plur. opn. of Arabian, J.) (*Ehrlich*).)  "The Act creates uniform procedures for local agencies to follow in establishing, imposing, collecting, accounting for, and using development fees."  (*Walker*, *supra*, 239 Cal.App.4th at p. 1357.)  It also establishes "procedures for protesting the imposition of fees and other monetary exactions imposed on a development by a local agency."  (*Ehrlich*, at p. 864 (plur. opn. of Arabian, J.).)

The Act defines a " '[f]ee' " as "a monetary exaction other than a tax or special assessment . . . that is charged by a local agency to the applicant in connection with approval of a development project for the purpose of defraying all or a portion of the cost of public facilities related to the development project."  (§ 66000, subd. (b).)  For purposes of the Act, a " '[d]evelopment project' " "includes a project involving the issuance of a permit for construction or reconstruction, but not a permit to operate."  (*Id.*, subd. (a).)  Under the Act, " '[p]ublic facilities' " refers to "public improvements, public services, and community amenities."  (*Id.*, subd. (d).)

The requirements embodied in the Act apply at various stages of the fee imposition and development process.  Section 66001, subdivision (a), applies when the

13

city or local agency first adopts a fee for a type of development project. (*Garrick Development Co. v. Hayward Unified School Dist.* (1992) 3 Cal.App.4th 320, 336 (*Garrick*).) To establish a development fee, a local agency must identify the fee's purpose and the use to which it will be put. (§ 66001, subds. (a)(1), (2).) The agency must also determine that the "fee's use" (*id*., subd. (a)(3) and the "need for the public facility" are reasonably related to "the type of development project on which the fee is imposed." (*Id*., subd. (a)(4); see *Walker*, *supra*, 239 Cal.App.4th at p. 1358.) A development fee must be used "solely and exclusively for the purpose or purposes" the agency identified when it imposed the fee on the development project. (§ 66008; see § 66006, subds. (a), (f).) It may not be "levied, collected, or imposed for general revenue purposes." (§ 66008; see § 66006, subd. (a).)

Section 66001, subdivision (b), applies to "adjudicatory, case-by-case actions" in which the agency ascertains the public facility cost attributable to a particular development. (*Garrick*, *supra*, 3 Cal.App.4th at p. 336.) To impose an established development fee as a condition of approval for a specific project, an agency must determine "how there is a reasonable relationship between the amount of the fee and the cost of the public facility or portion of the public facility attributable to the development on which the fee is imposed." (§ 66001, subd. (b); see *Walker*, *supra*, 239 Cal.App.4th at p. 1358.) At the time the agency imposes a development fee on a specific project, it must also "identify the public improvement that the fee will be used to finance." (§ 66006, subd. (f).)

Once a local agency collects a fee, it must abide by certain requirements for its deposit, use, and accounting. (§§ 66001, subd. (c), 66006, 66008.) "In general, the local agency must deposit the fee collected 'with the other fees for the improvement in a separate capital facilities account or fund in a manner to avoid any commingling of the fees with other revenues and funds of the local agency . . . .' (§ 66006, subd. (a).)" (*Home Builders Assn. of Tulare/Kings Counties, Inc. v. City of Lemoore* (2010) 185

14

Cal.App.4th 554, 573 (*Home Builders*).) Under section 66006, subdivision (b), the local agency must provide annual accountings of the funds into which it has deposited fees collected under section 66001.

Each year, within 180 days of the end of the fiscal year, the local agency must in a regularly scheduled public meeting inform the public about the development fee fund or account. (§ 66006, subd. (b)(1), (2).) The annual public accounting must describe the type of fee in the fund, the account balance and interest earned, and provide an approximate date when construction will begin if the agency determines it has collected sufficient funds to finance the public improvement identified when the fee was imposed. (§ 66006, subd. (b)(1)(A)–(F).) Section 66006 does not include any explicit remedy if the local agency fails to comply with this annual accounting requirement.

In addition to the annual accounting requirement under section 66006, section 66001(d) imposes a five-year accounting requirement. It provides, "For the fifth fiscal year following the first deposit into the account or fund, and every five years thereafter, the local agency shall make all of the following findings with respect to that portion of the account or fund remaining unexpended, whether committed or uncommitted: [¶] (A) Identify the purpose to which the fee is to be put. [¶] (B) Demonstrate a reasonable relationship between the fee and the purpose for which it is charged. [¶] (C) Identify all sources and amounts of funding anticipated to complete financing in incomplete improvements identified in paragraph (2) of subdivision (a). [¶] (D) Designate the approximate dates on which the funding referred to in subparagraph (C) is expected to be deposited into the appropriate account or fund."

These five-year findings under section 66001(d) must be made "in connection with" the annual public accounting required by section 66006, subdivision (b). (§ 66001, subd. (d)(2), hereafter § 66001(d)(2).) In contrast to section 66006, section 66001(d) includes a specific remedy for failure to comply. It states, "If the [five-year] findings are

15

not made as required by this subdivision, the local agency *shall refund the moneys in the account or fund* as provided in subdivision (e)." (§ 66001(d)(2), italics added.)

Section 66001, subdivision (e) contains a separate refund provision. It states that "when sufficient funds have been collected . . . to complete financing on incomplete public improvements . . . and the public improvements remain incomplete, the local agency shall identify, within 180 days of the determination that sufficient funds have been collected, an approximate date by which the construction of the public improvement will be commenced, or shall refund to the then current record owner or owners of the lots or units, as identified on the last equalized assessment roll, of the development project or projects on a prorated basis, the unexpended portion of the fee, and any interest accrued thereon." (§ 66001, subd. (e).)

Sections 66020 and 66021 of the Act set forth procedures to protest the initial imposition of a development fee (or other exaction) on a development project and include strict time limits in which to file an action to review or set aside the fee imposition. (See *Barratt American Inc. v. City of Rancho Cucamonga* (2005) 37 Cal.4th 685, 691, 696 (*Barratt American*); *Sterling Park, L.P. v. City of Palo Alto* (2013) 57 Cal.4th 1193, 1207, 1209 (*Sterling Park*).) However, the Act does not specify procedures for a protest action or refund demand based upon a local agency's purported failure at a later stage to comply with public information and refund procedures under sections 66006 and 66001(d). Furthermore, there are few reported cases examining these latter provisions.

The trial court decided that plaintiffs are not entitled to relief under section 66001(d). We next consider the standards applicable to our review of that conclusion.

B. *Standard of Review*

Courts generally review a local agency's establishment or imposition of a development fee under the Mitigation Fee Act under the rules of ordinary mandamus review (Code Civ. Proc., § 1085). (*Garrick*, *supra*, 3 Cal.App.4th at p. 328; accord *Walker*, *supra*, 239 Cal.App.4th at p. 1362; *Boatworks, LLC v. City of Alameda* (2019) 35

16

Cal.App.5th 290, 298.) Only one reported appellate decision has considered the standard of review for a challenge based upon the retention of unexpended development fees under section 66001(d). In *Walker*, the court reasoned that an agency's compliance with the Mitigation Fee Act's five-year findings requirement is subject to the same standard of review as the agency's initial adoption of a development fee under the Act. (*Walker*, at p. 1363.) We agree. Consistent with *Walker*, we consider an agency's five-year findings—and any subsequent decision to issue (or refusal to issue) a requested refund in connection with those findings—to be a quasi-legislative action subject to review under the standards applicable to ordinary mandamus. (*Ibid.*)

Under those principles, we apply the same standard of review as the trial court and review the City's action de novo. (*Walker*, *supra*, 239 Cal.App.4th at p. 1362; *McIntyre v. Sonoma Valley Unified School Dist.* (2012) 206 Cal.App.4th 170, 179.) The standard applicable to ordinary mandamus review is limited "to determining whether the local agency's action ' "was arbitrary, capricious or entirely lacking in evidentiary support, or whether it failed to conform to procedures required by law." ' " (*Walker*, at p. 1362; *American Coatings Assn. v. South Coast Air Quality Management Dist.* (2012) 54 Cal.4th 446, 460 (*American Coatings*).) Where, as here, the relevant facts are largely undisputed and the issue is one of statutory interpretation, the question is one of law which we review de novo. (*Walker*, at p. 1363; see *California Charter Schools Assn. v. City of Huntington Park* (2019) 35 Cal.App.5th 362, 369; *Small Property Owners of San Francisco Institute v. City and County of San Francisco* (2018) 22 Cal.App.5th 77, 84.)

C. *Applicability of the Mitigation Fee Act*

We first consider whether the in-lieu parking fee meets the Act's statutory definition of "fees." Plaintiffs contend that it clearly does so, based on both the plain text of the Act and its legislative history. Furthermore, plaintiffs emphasize that the City itself, prior to 2019, consistently recognized and treated in-lieu fees as subject to the same procedures and requirements as other development impact fees. The City counters that,

17

although it historically "voluntarily adopted" five-year findings for the parking fee fund, it "was not required to do so." Instead, the City argues that the Mitigation Fee Act does not apply to this type of in-lieu fee, which a developer voluntarily elects to pay in exchange for being relieved of a statutory requirement (here, the requirement to provide on- or off-site parking spaces in connection with new development).

For the reasons explained below, we decide that the in-lieu parking fee—as established in the City's municipal code and imposed on plaintiffs to mitigate the impact of their development project on parking congestion in the University Avenue assessment district—is a fee subject to the Mitigation Fee Act.

The construction of a statute and its applicability to a given case are questions of law subject to our independent review. (*Sierra Pacific Industries v. Workers' Comp. Appeals Bd.* (2006) 140 Cal.App.4th 1498, 1505 (*Sierra Pacific*).) We interpret the Act according to established principles of statutory construction. Our primary task in construing the statute "is to ascertain the intent of the Legislature so as to effectuate the purpose of the law." (*Dyna-Med, Inc. v. Fair Employment & Housing Com.* (1987) 43 Cal.3d 1379, 1386 (*Dyna-Med*).) We "look first to the words of the statute [], giving to the language its usual, ordinary import and according significance, if possible, to every word, phrase and sentence in pursuance of the legislative purpose." (*Id*. at pp. 1386–1387.) If the meaning remains uncertain, we may consider "the consequences that will flow from a particular interpretation." (*Id*. at p. 1387; see *Mejia v. Reed* (2003) 31 Cal.4th 657, 663 (*Mejia*).)

Applying these principles, we note that the Mitigation Fee Act applies broadly to "any action" in which a "fee" is imposed "as a condition of approval of a development project by a local agency." (§ 66001, subd. (a).) A " '[f]ee' " subject to these provisions is defined as "a monetary exaction other than a tax or special assessment . . . charged by a local agency to the applicant in connection with approval of a development project for the

18

purpose of defraying all or a portion of the cost of public facilities related to the development project." (§ 66000, subd. (b).)

By its plain terms, the Act applies when "a monetary exaction" (§ 66000, subd. (b)) imposed in connection with an applicant's development project for the purpose of defraying the cost of public facilities related to the development project is charged by a local agency "as a condition of approval of a development project by a local agency . . . ." (§ 66001, subd. (a).)

According to the adopting ordinance and municipal code, the in-lieu parking fee allows certain new, nonresidential developments in the University Avenue parking assessment district to satisfy downtown parking requirements by funding the provision of parking through the in-lieu mechanism. (See Ordinance No. 4256, adopted Jan. 17, 1995, § 1(E); Palo Alto Mun. Code, chs. 16.57.010, 18.18.090, 18.52.070(d).) The resulting parking fund is designated to "be used to finance the construction of new parking facilities to meet the increased parking demand caused by [the] new nonresidential developments." (Ordinance No. 4256, § 1(F).) The collected fees are limited to use "for construction of public parking spaces within the assessment district to serve the parking needs . . . created by the developments that paid the fees." (Palo Alto Mun. Code, § 16.57.060.) Further, payment of the fee established by the in-lieu parking fee regulation "shall be a condition of the approval of or permit for any new development." (*Id*., § 16.57.010.)

The municipal code provisions and ordinance adopting the in-lieu fee together confirm that the in-lieu parking fee is a type of "monetary exaction . . . charged by a local agency to the applicant in connection with approval of a development project for the purpose of defraying all or a portion of the cost of public facilities related to the development project." (§ 66000, subd. (b).) The municipal code expressly states, for eligible developments, that payment of the in-lieu parking fee "shall be a condition of the approval of . . . any new development." (Palo Alto Mun. Code, § 16.57.010.)

19

Further clarifying this application, among other conditions, the City conditioned its approval of the project at 135 Hamilton Avenue on plaintiffs' compliance with the parking requirements set forth in the City's municipal zoning code. Condition No. 8 specifically addressed plaintiffs' need to comply with the parking requirements, either by paying the in-lieu fee or obtaining approval for off-site or underground parking, or "some combination thereof."

Our determination based on the plain language of the Act makes it unnecessary to resort to extrinsic interpretive aids such as the legislative history of the statute.[4] (See *Lungren v. Deukmejian* (1988) 45 Cal.3d 727, 735.) Moreover, the option of paying an impact fee "in lieu" of some other form of mitigation of the public impact attributable to new development is unremarkable in the context of development impact fees. As the United States Supreme Court observed, "[s]uch so-called 'in lieu of' fees are utterly commonplace [citation], and they are functionally equivalent to other types of land use exactions." (*Koontz v. St. Johns River Water Management Dist.* (2013) 570 U.S. 595, 612 (*Koontz*).)[5]

---

[4] We nevertheless grant plaintiffs' unopposed request that this court take judicial notice of two committee reports comprising legislative history relating to the enactment of the Mitigation Fee Act in 1987. (See Sen. Local Gov. Com., on Assem. Bill No. 1600 (1987-1988 Reg. Sess.) July 1, 1987; Sen. Rules Comm., Off. of Sen. Floor Analyses, 3d reading analysis of Assem. Bill No. 1600 (1987-1988 Reg. Sess.) as amended Aug. 26, 1987.) The legislative history provides reinforcement for our determination that the statute's plain meaning comports with its purpose and is moreover relevant in understanding later amendments to the Act, discussed *post*. (See pt. II.E.)

[5] In *Koontz,* the Supreme Court extended the *Nollan/Dolan* analytical framework under the unconstitutional conditions doctrine to permitting approvals conditioned on payment of a monetary fee. (*Koontz*, *supra*, 570 U.S. at p. 612.) *Nollan v. California Coastal Commission* (1987) 483 U.S. 825 and *Dolan v. City of Tigard* (1994) 512 U.S. 374 arose in the context of takings challenges under the Fifth Amendment and concerned the right to just compensation for property exacted by the government as a condition of land-use permit approval. Together, *Nollan* and *Dolan* establish that the government may not condition the approval of a land-use permit on the owner's relinquishment of a portion of his property unless it can establish a " 'nexus' " and " 'rough proportionality' "

20

Our review of the extensive body of case law concerning these types of fees and similar government exactions has revealed no case in which the "in lieu" or elective aspect of the imposition changes the nature of the fee or exaction for purposes of the Act. In *Ehrlich*, the California Supreme Court evaluated certain monetary exactions imposed by the city council in connection with its approval of a new residential development, including payment of a $280,00 recreation fee in lieu of the construction of tennis courts, as well as a $33,200 fee in lieu of providing public art. (*Ehrlich*, *supra*, 12 Cal.4th at pp. 862–864 (plur. opn. of Arabian, J.).) The court considered the appropriate standard of scrutiny for these exactions, including the applicability of the *Nollan/Dolan* test for a compensable regulatory taking to nonpossessory monetary exactions. (*Id*. at p. 859.) A majority of the court addressed the relationship between the *Nollan/Dolan* framework and the substantive standard imposed by the Mitigation Fee Act. (*Ehrlich*, at pp. 860, 865–867 (plur. opn. of Arabian, J.); *id.* at p. 898, fn. 2 (conc. opn. of Mosk, J.).) In synthesizing these standards, a majority of the court appeared to acknowledge that in-lieu fees are subject to the Act, which the court explained is "for the most part procedural in nature" (*id*. at p. 865 (plur. opn. of Arabian, J.)) but "also embodies a statutory standard against which monetary exactions by local governments subject to its provisions are measured." (*Ibid*.)

More specifically, the plurality explained that the Act "codifies, as the statutory standard applicable by definition to nonpossessory monetary exactions, the 'reasonable relationship' standard employed in California and elsewhere to measure the validity of required dedications of land (or *fees imposed in lieu* of such dedications) that are challenged under the Fifth and Fourteenth Amendments." (*Ehrlich*, *supra*, 12 Cal.4th at p. 865 (plur. opn. of Arabian, J.), italics added.) The majority in *Ehrlich* agreed "that to the extent a development mitigation fee is not subject to heightened scrutiny under

between its demand and the effects of the proposed land use. (*Koontz*, *supra*, 570 U.S. at p. 599.)

*Nollan* and *Dolan*, there must nonetheless be a 'reasonable relationship' between the fee and the deleterious impacts for mitigation of which the fee is collected." (*San Remo Hotel L.P. v. City and County of San Francisco* (2002) 27 Cal.4th 643, 667 (*San Remo*), citing *Ehrlich*, at pp. 865, 867 (plur. opn. of Arabian, J.); *Ehrlich*, at p. 897 (conc. opn. of Mosk, J.).)

In subsequent cases, including *California Building Industry Assn. v. City of San Jose* (2015) 61 Cal.4th 435 (*California Building*), the California Supreme Court has clarified aspects of its decision in *Ehrlich* as well as the standards applicable to various types of fees. These cases support our reading of the Mitigation Fee Act that the offering of an election (or in-lieu alternative) does not, as a matter of law, remove the fee from the purview of the Act.

In *San Remo*, the court upheld the application of the Act to a city ordinance which imposed a "housing replacement" requirement on development seeking to convert residential units to tourist use. (*San Remo*, *supra*, 27 Cal.4th at pp. 668–669.) A developer could choose to comply with the ordinance "by constructing or bringing onto the market new units; by sponsoring such construction by a public or nonprofit private housing developer; or by paying, in lieu of such construction, a fee to a designated City housing fund." (*Id*. at p. 668.) In rejecting the developer's takings challenge, the court noted that under the majority's holding in *Erhlich*, and pursuant to the Mitigation Fee Act, a mitigation fee that is not subject to the heightened scrutiny of *Nollan* and *Dolan* must nonetheless satisfy the generally applicable "reasonable relationship" standard between the fee, its intended use, and the "deleterious public impact of the development." (*San Remo*, at p. 671, citing § 66001; see also *Sheetz v. County of El Dorado* (2022) 84 Cal.App.5th 394, 409 [noting, under *San Remo*, that legislatively imposed development impact fees not subject to the *Nollan*/*Dolan* test "remain subject to the means-end judicial review under the" Act].) The high court applied the "reasonable relationship" standard to the in-lieu fee paid by the developer and concluded it was consistent with the impacts in

22

loss of housing units based on the developer's proposed change in use.  (*San Remo*, at pp. 678–679.)

In *Sterling Park*, the California Supreme Court considered a developer's challenge to the city's inclusionary housing program, which required certain developments to provide 20 percent of units below market rate by electing one or more of certain alternatives.  (*Sterling Park*, *supra*, 57 Cal.4th at p. 1196.)  Among the options was "a cash payment to the City's housing development fund in lieu of providing below market rate units or land."  (*Ibid*.)  At issue on appeal was the timeliness of the developer's legal challenge to the below market housing requirement, which in turn depended on whether the requirements at issue "constitute[d] the imposition of 'any fees . . . or other exactions' under section 66020, subdivision (a)," of the Mitigation Fee Act.  (*Id*. at p. 1195.)

In deciding that section 66020 applied to the below market housing requirement, the California Supreme Court clarified that "other exactions" under section 66020 includes "conditions on development a local agency imposes that divest the developer of money or a possessory interest in property, but not restrictions on the manner in which a developer may use its property."  (*Sterling Park*, *supra*, 57 Cal.4th at p. 1207.)  The court stated that either of the two options available to the developer (paying an in-lieu fee, or providing the city an option to purchase below market rate units) "would constitute an exaction."  (*Ibid*.)  It further observed that "[t]he imposition of the in-lieu fees is certainly similar to a fee."  (*Ibid*.)

We recognize that in *Sterling Park* our high court was not asked to consider, and did not decide, whether the below market rate housing program's in-lieu fee option was in fact a "fee" imposed as a condition of approval of a development project under section 66001.  (See *California Building*, *supra*, 61 Cal.4th at p. 482.)  Even so, the court's recognition that the in-lieu fee was an "exaction" for purposes of section 66020 and "similar to a fee" (*Sterling Park*, *supra*, 57 Cal.4th at p. 1207) strongly supports that possibility.  At a minimum, we do not interpret the court's qualifying language "similar

23

to" as precluding a determination that an in-lieu fee may constitute a "fee" under the Act. Rather, we read the language in *Sterling Park* as wholly consistent with the statutory framework, whereby " '[f]ee' " represents a specific type of exaction, namely, "a monetary exaction other than a tax or special assessment, . . . that is charged by a local agency to the applicant in connection with approval of a development project for the purpose of defraying all or a portion of the cost of public facilities related to the development project." (§ 66000, subd. (b).) When such a fee is imposed as a condition of approval of a development project (§ 66001, subd. (a)), the procedural requirements of the Act apply.

The California Supreme Court's more recent decision in *California Building* also supports our reading of the Act. There, the court held that conditions of a City of San Jose inclusionary housing ordinance, which required new residential development projects to sell a percentage of the for-sale units at a price affordable to low- or moderate-income households, did not effect an "exaction" under the takings clause of the federal or state Constitution but rather constituted a constitutionally permissible, legislatively imposed land use regulation related to the public welfare. (*California Building*, *supra*, 61 Cal.4th at pp. 442–444, 461.) The court specifically distinguished the type of in-lieu monetary fee at issue in *San Remo* (where the high court applied the statutory "reasonable relationship" standard) from the restrictions imposed by the San Jose ordinance. (*Id*. at p. 444.) It explained that whereas the condition in *San Remo* involved "an lieu monetary fee . . . imposed to mitigate a particular adverse effect of the development proposal under consideration" (*ibid*.), the conditions imposed by San Jose's inclusionary housing ordinance "do not require a developer to pay a monetary fee but rather place a limit on the way a developer may use its property." (*Ibid*.) The high court emphasized that the purpose of a development mitigation fee (such as in *San Remo*) "is to mitigate the effects or impacts of the developments on which the fee is imposed" (*id*. at p. 472), consistent with the Mitigation Fee Act's statutory definition and use of the term " 'fee' " in sections

24

66000, subdivision (b), and 66001. (*Ibid*.) By contrast, the court clarified that "[t]he term 'fee' does not purport to encompass use restrictions, and certainly not use restrictions that are imposed for a different purpose." (*Ibid*.)

The appellate court's decision in *616 Croft Ave., LLC v. City of West Hollywood* (2016) 3 Cal.App.5th 621 is consistent with our reading of the Act. Like *California Building*, *616 Croft* involved a challenge to the city's inclusionary housing ordinance. Unlike the San Jose ordinance in *California Building*, the West Hollywood ordinance in *616 Croft* provided an election for developers "to sell or rent a portion of their newly constructed units at specified below-market rates or, if not, to pay an 'in-lieu' fee designed to fund construction of the equivalent number of units the developer would have otherwise been required to set aside." (*Id*. at p. 625.) The court in *616 Croft* relied on the California Supreme Court's determination in *California Building* to hold that the developer's payment of the in-lieu fee was not an exaction governed by the Mitigation Fee Act. (*Id*. at p. 628.) The court reasoned that insofar as the in-lieu fee was merely "an alternative to the on-site affordable housing requirement" (*id*. at p. 629), its validity was logically governed by the same standard the high court applied to the on-site affordable housing requirement in *California Building*. (*Ibid*.) The court further noted that like in *California Building*, "the purpose of the in-lieu housing fee here is not to defray the cost of increased demand on public services resulting from [the developer]'s specific development project, but rather to combat the overall lack of affordable housing" and thus falls under the broader class of land use regulation to enhance the public welfare. (*Ibid*., citing *California Building*, *supra*, 61 Cal.4th at p. 444.)

Here, the requirement that new nonresidential development provide off-street parking facilities is "proportional to the need created by each use, in order to alleviate traffic congestion." (Palo Alto Mun. Code, § 18.52.010.) The in-lieu parking fee serves this purpose for new development that would not otherwise be able to satisfy the parking requirements. (*Id*., § 18.52.070(d).) The in-lieu fee is directed at "mitigat[ing] a

particular adverse effect of the development proposal under consideration" (*California Building*, *supra*, 61 Cal.4th at p. 444)—namely, the traffic congestion and parking impacts created by the new downtown development. It is placed into the separate parking fund for that purpose. (See Palo Alto Mun. Code, § 16.57.050.) Therefore, the in-lieu parking fee does not conform to the description in *California Building* of a "use restriction" imposed for a non-mitigation purpose or directed at improving public welfare. (*California Building*, at p. 472.)

The reasons advanced by the City in support of its contrary argument are not persuasive. The City argues that unlike the conditions for approval of the project set forth in condition No. 9, which separately required plaintiffs to pay development impact fees of more than half of a million dollars prior to issuance of the project's building permits, the in-lieu election provided in condition No. 8 allowed plaintiffs to *choose* to pay instead of directly providing a certain number of parking spaces. But as we have already concluded based on the Mitigation Fee Act's broad coverage when "a monetary exaction" is imposed in connection with and as a condition of approval of a development project for the purpose of defraying the cost of facilities related to the project (§§ 66000, subd. (b), 66001, subd. (a)), the in-lieu or elective aspect of the fee does not remove it from the Act's purview.

The City also points to *California Building Industry Assn. v. San Joaquin Valley Air Pollution Control Dist.* (2009) 178 Cal.App.4th 120 (*San Joaquin*), as well as to the Supreme Court's decision in *Ehrlich* regarding the in-lieu public art fee, as further support for its contention that an in-lieu fee is not an exaction governed by the Mitigation Fee Act. We disagree that either case dictates that the type of in-lieu fee at issue here is not a monetary exaction subject to the Act.

*San Joaquin* involved a challenge to a pollution control rule in which developers were required to reduce indirect pollution caused by new development projects "by incorporating pollution-reducing features in the project, or by paying a fee to fund off-site

26

projects that will reduce emissions, or by a combination of the two." (*San Joaquin*, *supra*, 178 Cal.App.4th at pp. 124–125.) Although the appellate court concluded that the emissions reduction requirement (including the in-lieu fee) was neither subject to nor in violation of the Mitigation Fee Act, the in-lieu aspect of the regulation was not relevant to the court's determination. Instead, the court relied on the distinction between a development fee subject to the Act, which requires "approval of the development project [to] be conditioned on payment of the fee" (*id*. at p. 131), and a regulatory fee imposed under the agency's police power. Because the pollution reduction regulations did not condition approval of the development on the proposed air quality plan, the court concluded the fee was not a development fee subject to the Act. (*Id*. at pp. 128, 131.)

Here, unlike in *San Joaquin*, the City's approval of the project at 135 Hamilton Avenue was conditioned on payment of the in-lieu parking fee. Moreover, the "condition of approval" term is expressly written into the municipal code, which provides that payment of the in-lieu parking fee "shall be a condition of the approval of . . . any new [eligible] development." (Palo Alto Mun. Code, § 16.57.010.) That there are alternative means of complying with the parking condition—whether by directly providing the required number of new parking spaces or by electing to contribute the equivalent cost by paying the in-leu parking fee—is not determinative. When the election applies, it *is* a condition of approval for the development project. (Cf. *San Joaquin*, *supra*, 178 Cal.App.4th at p. 131; § 66001, subd. (a).) Thus, while the City is correct that "a fee does not become a 'development fee' simply because it is made in connection with a development project" (*Barratt American*, *supra*, 37 Cal.4th at p. 699), an in-lieu fee, like Palo Alto's in-lieu parking fee, is a development fee for purposes of the Mitigation Fee Act if it meets the definition set forth in section 66001.

Further, our conclusion is consistent with the legislative purpose behind the Act to require local agencies to follow uniform procedures in imposing, accounting for, and using development fees (*Walker*, *supra*, 239 Cal.App.4th at p. 1357; see §§ 66001,

66006) and to create a statutory "mechanism . . . to guard against unjustified fee retention" (*Home Builders*, *supra*, 185 Cal.App.4th at p. 565) in the event an agency's procedures fall short.

Having decided that the Act governs Palo Alto's in-lieu parking fee,[6] we consider whether the trial court erred in denying plaintiffs' refund claim under section 66001(d). We begin with the City's assertion that plaintiffs' claim was not timely filed.

D. *Statute of Limitations*

Plaintiffs challenge the trial court's ruling that plaintiffs' action for a refund under the Act is barred by Code of Civil Procedure section 340's one-year statute of limitations applicable to claims based on penalty or forfeiture. Plaintiffs maintain that, in concluding the action is time-barred, the trial court erroneously relied on dicta in *El Dorado*, *supra*, 42 Cal.App.5th 620, and misconstrued the date of accrual of the action. Plaintiffs contend that the applicable statute of limitations is Code of Civil Procedure section 343's four-year "catch all" or, alternatively, Code of Civil Procedure section 338, subdivision (a)'s three-year statute of limitations for actions "upon a liability created by statute." Plaintiffs maintain that, regardless of which limitations period might be applicable, the action is timely when accrual is properly measured from the City's denial of plaintiffs' request for a refund.

In response, the City does not address plaintiffs' accrual argument. Regarding the proper statute of limitations, the City disagrees with the reasoning in *El Dorado* (that an action for refund under section 66001(d) is in the nature of a penalty or forfeiture) and agrees with plaintiffs that the applicable statute of limitations is three years under section 338, subdivision (a). The City nevertheless maintains that the trial court's judgment

---

[6] In light of this conclusion, we need not address plaintiffs' alternative argument that the City is judicially estopped from disputing application of the Mitigation Fee Act to the in-lieu parking fee due to its earlier treatment of the in-lieu parking fees it collected as subject to the Act's five-year findings requirement.

28

should be affirmed on other grounds.  To the extent that the timeliness of plaintiffs' action turns on when the action accrued, regardless of which statute of limitations applies, we begin with that question.

Plaintiffs characterize this action as an action for refund relief.  They contend that because they filed the action less than three months after the City denied their refund request, the action was timely filed within one year of its accrual.

The relevant facts are not in dispute; therefore, we decide the application of the statute of limitations as a question of law.  (*International Engine Parts, Inc. v. Feddersen & Co.* (1995) 9 Cal.4th 606, 611; see also *Aryeh v. Canon Business Solutions, Inc.* (2013) 55 Cal.4th 1185, 1191; *Blaser v. State Teachers' Retirement System* (2019) 37 Cal.App.5th 349, 364.)

As a rule, a civil action may be brought only within the prescribed statute of limitations period once a cause of action has accrued.  (Code Civ. Proc., § 312; *Fox v. Ethicon Endo-Surgery*, *Inc*. (2005) 35 Cal.4th 797, 806.)  A cause of action typically accrues at the time " 'when a suit may be maintained.' " (*Howard Jarvis Taxpayers Assn. v. City of La Habra* (2001) 25 Cal.4th 809, 815 (*Howard Jarvis*).)  " ' "Ordinarily this is when the wrongful act is done and the obligation or the liability arises, but it does not 'accrue until the party owning it is entitled to begin and prosecute an action thereon.' " [Citation.]  In other words, "[a] cause of action accrues 'upon the occurrence of the last element essential to the cause of action.' " ' " (*Ibid*.)  Stated differently, "a cause of action accrues at 'the time when the cause of action is complete with all of its elements.' " (*Fox*, at p. 806.)

We agree with plaintiffs that the thrust of their action under section 66001 is for refund relief.  It is the nature of the right sued upon, that is, "the 'gravamen' of the cause of action" which determines the applicable statute of limitations.  (*Hensler v. City of Glendale* (1994) 8 Cal.4th 1, 22; see *E-Fab, Inc. v. Accountants, Inc. Services* (2007) 153 Cal.App.4th 1308, 1316.)  Plaintiffs filed the petition and complaint in May 2020, three

29

months after the City's February 2020 letter denying Chop Keenan's refund request. The action sought a writ directing the City "to make restitution of all such Fees unlawfully retained by the City without adequate or timely accounting . . . , including refunds of all such Fees paid by Plaintiffs." The action also sought declaratory and injunctive relief regarding the City's "continued retention of such Fees" and for "an equitable and injunctive decree directing the [City] to promptly make restitution and refunds of the subject Fees which have not been properly or timely used for their ostensible purpose and for which the [City] ha[s] failed to make timely findings or accountings."

Insofar as the action seeks, in plaintiffs' words, "to compel compliance with the refund 'mechanism' – not to compel the City to make *ex post facto* findings after the deadline has already run" (underscoring omitted), we agree that accrual of the action could not occur prior to the City's action denying the refund request. While any obligation of the City to issue findings arose on the statutorily prescribed due date (within 180 days after the end of the relevant fiscal year, pursuant to sections 66001(d)(2) and 66006, subdivision (b)(1)), it is not " ' "when the wrongful act is done and the obligation or the liability arises" ' " but when " ' " 'the party owning it is entitled to begin and prosecute an action thereon' " ' " that determines the action is complete with all of its elements. (*Howard Jarvis*, *supra*, 25 Cal.4th at p. 815.) Section 66001(d)(2) directs that the local agency shall refund the unexpended money in the fund "as provided in subdivision (e)." However, section 66001(d)(2) does not specify a time period or process for the refund based on a failure to make the required five-year findings.

Under these circumstances, only upon the City's refusal to issue a refund could plaintiffs maintain a suit based upon a refund demand for alleged noncompliance with the Mitigation Fee Act's accounting and findings requirements. (*Howard Jarvis*, *supra*, 25 Cal.4th at p. 815 [cause of action accrues " 'when a suit may be maintained' "].) As stated in analogous actions involving tax and other types of refunds, "[t]he cause of action for a refund does not accrue until the claim for refund has been denied or rejected

30

in some manner." (*State of California ex rel. Dept. of Motor Vehicles v. Superior Court* (1998) 66 Cal.App.4th 421, 435 (*State of California*) [concerning timeliness of class claims in action for refund of motor vehicle license fees]; see also *Geneva Towers Ltd. Partnership v. City of San Francisco* (2003) 29 Cal.4th 769, 772; *Miller & Lux v. Batz* (1904) 142 Cal. 447, 450–453.)

To summarize the relevant timeline, the City made five-year findings on certain development fee funds in a resolution adopted in January 2019 for the fiscal year that ended on June 30, 2018, but omitted any findings on the parking fund. In January 2020, Chop Keenan requested that the City refund the in-lieu parking fees, with interest, that plaintiffs had paid in December 2013 in connection with the development of the property at 135 Hamilton Avenue. In February 2020, the City issued the letter rejecting Keenan's request for a refund under the Mitigation Fee Act. And on May 11, 2020, after rejecting the refund request and about two weeks before plaintiffs filed this action on May 22, 2020, the city council adopted the May 2020 five-year findings under section 66001(d), in which it addressed the parking fund for the fiscal year that ended on June 30, 2019.

We decide that, at the earliest, plaintiffs' action for a refund accrued on February 24, 2020, when the City denied the request for a refund of the unexpended in-lieu parking fees. (See *State of California*, *supra*, 66 Cal.App.4th at p. 435.) Plaintiffs' filing of the petition and complaint less than three months after the denial of their request, and only weeks after the City attempted to remedy any perceived deficiencies by issuing the May 2020 five-year findings, was timely regardless of whether the applicable statute of limitations is one year under *El Dorado* and Code of Civil Procedure section 340, or three or four years under Code of Civil Procedure sections 338 and 343, respectively.

Because plaintiffs' action is timely under any of the three, possible statute-of-limitations periods discussed by the parties, we need not definitively resolve for purposes of this appeal whether the trial court erred in applying the one-year statute of limitations for an action upon a statute for a penalty or forfeiture. (See Code Civ. Proc., § 340, subd.

31

(a); *El Dorado*, *supra*, 42 Cal.App.5th at p. 627.)  We similarly need not address plaintiffs' alternative arguments concerning continuous accrual, based on the City's issuance of supplemental findings in May 2020, or equitable tolling.

Having decided that plaintiffs' claim was timely, we turn to the merits of plaintiffs' refund claim.

E. *Merits of Plaintiffs' Statutory Refund Claim*

On May 11, 2020, following plaintiffs' demand for a refund, the Palo Alto city council adopted a resolution making additional five-year findings under section 66001(d), for the fiscal year that ended on June 30, 2019.  (May 2020 five-year findings).  Plaintiffs contend the City's belated, five-year findings are legally insufficient.[7]  Plaintiffs submit that this court should therefore reverse the judgment and direct the trial court to order the requested refund of the unexpended in-lieu parking fees in accordance with section 66001 (or, alternatively, under principles of equitable restitution).

The City disputes this proposed disposition.  The City asserts that even if the five-year findings are deemed deficient, the proper remedy would be a remand with directions to the City to cure any legal defect.

We review de novo the City's adoption of the January 2019 five-year findings (omitting any mention of the parking fund) and May 2020 five-year findings (addressing the parking fund) and decide whether the actions are " ' "entirely lacking in evidentiary support, or . . . failed to conform to procedures required by law." ' " (*Walker*, *supra*, 239 Cal.App.4th at p. 1362; *American Coatings*, *supra*, 54 Cal.4th at p. 461.)

The relevant dates are not in dispute.  The City began collecting in-lieu parking fees and depositing them in the parking fund in the fiscal year that ended on June 30,

---

[7] The trial court addressed this issue in its finding in the event of appellate reversal on the legal issues discussed *ante.*  The parties dispute the legal effect of this finding by the trial court.  As the question whether the City's findings were timely under section 66001(d) is a matter of law subject to de novo review, we need not reach this issue.

1996.  The City issued five-year reports under section 66001(d) for the parking fund for fiscal years 2003 and 2009 that showed unexpended fees in the fund.

On December 31, 2013, prior to issuance of the project's building permits (in conformity with condition Nos. 8 and 9), plaintiffs paid the City $1,560,475.16 in development impact fees for the property, including $972,000 in in-lieu parking fees (later reduced to $906,900).  Under the City's municipal code, this payment occurred in the fiscal year that ended on June 30, 2014.  (Palo Alto Mun. Code, § 2.28.010.)

On January 13, 2014, the city council adopted five-year findings under section 66001(d) for the fiscal year that ended on June 30, 2013 (Resolution No. 9389).  These findings addressed $90,696 in unexpended "University Avenue Parking In-Lieu Parking Development Fees" collected between 2001 and 2008, together with accrued interest.  On January 22, 2019, the city council adopted its next set of five-year findings for the fiscal year that ended on June 30, 2018 (Resolution No. 9816), omitting any mention of the in-lieu parking fees but addressing other categories of development fee funds maintained by the City.  As noted *ante*, the record shows there was a positive balance of unexpended fees in the parking fund for the fiscal years ending on June 30, 2014, through June 30, 2020.

On May 11, 2020, after plaintiffs requested a refund based on the omission of in-lieu parking fees from the January 2019 five-year findings, the city council adopted the May 2020 five-year findings for the fiscal year that ended on June 30, 2019.  (Resolution No. 9887.)  The May 2020 five-year findings, issued 10 months after the fiscal year that ended on June 30, 2019 (and 22 months after the fiscal year that ended on June 30, 2018), addressed $6,117,748 in unexpended, University Avenue in-lieu parking fees, together with accrued interest.

### 1. The City was Obligated to Issue Five-Year Findings

The City contends that, under these circumstances, it was not required to adopt five-year findings for the fiscal year that ended on June 30, 2018, because on that date no in-lieu parking fees in the parking fund had been held for more than five years.

The City bases this assertion in part on the timing of its prior findings with respect to the parking fund. The City made substantive five-year findings related to the parking fund in January 2009 and in January 2014 (for the fiscal years that ended on June 30, 2008 and June 30, 2013, respectively). According to the City, "five years thereafter" under section 66001, subdivision (d)(1) (hereafter § 66001(d)(1)), meant the City's next set of five-year findings on the parking fund came due for the fiscal year that ended on June 30, 2018.[8]

In 2016 the City transferred $1.3 million from the parking fund to the capital fund. The City contends this transfer exhausted the balance of fees that had been in the parking fund for five years prior to June 30, 2018. In other words, the City maintains that insofar as the parking fund balance for the fiscal year that ended on June 30, 2013 (five years prior to the June 30, 2018 date) was $657,961, the City's transfer of $1.3 million from the fund in fiscal year 2016 for design planning and environmental review related to the new downtown parking garage "expended that entire balance, and significantly more (including much of [plaintiff]s' $906,900 payment)," even as other in-lieu parking fees (like plaintiffs') continued to be deposited into the parking fund.

The City's position appears to be that, when making five-year findings under the statute, it must account *only* for that portion of unexpended fees in the fund that were deposited more than five years earlier. The City argues that, based on the plain language

---

[8] Neither party has asked this court to opine upon the application of section 66001(d)(1) to the City's five-year timetable with respect to the date of the first deposit of fees into the parking fund (i.e., in the fiscal year that ended on June 30, 1996). We assume arguendo, for purposes of deciding this appeal, the accuracy of the June 30, 2018 date.

of the statute, the five-year findings apply only to "that portion of the account or fund remaining unexpended" for the fifth fiscal year following the initial deposit into the fund (§ 66001(d)(1)) of individual fee payments.  The city asserts that section 66001(d) refers only to that portion of the fees deposited at least five years prior, not the entire balance of the fund or account.  It asserts that if the Legislature had intended findings for amounts held less than five years, the statutory language would have required five-year findings for the entire remaining balance of the account, rather than "that portion" of the account.

The City claims that its reading of the statute is consistent with what it maintains is the "obvious purpose . . . to require local agencies to account for long-held funds it has not yet spent rather than more recently collected funds."  The City further argues that to interpret the five-year findings provision as applicable to *all unexpended fees in the fund*, including recently collected fees, would be inconsistent with other provisions of the Act.  (See, e.g., § 66020 subds. (d)–(e).)  Applying this interpretation of the law, the City maintains that it was not required to adopt five-year findings for the parking fund in January 2019 because it had not held any unexpended in-lieu parking fees for more than five years as of June 30, 2018.

Plaintiffs dispute this interpretation as an "erroneous re-writing" of section 66001(d).  They argue that the plain language of the statute does not limit a local agency's duty to make five-year findings based on when it received the balance of the unused fees in the fund.  Plaintiffs assert the City's reading of the statute would make the five-year findings requirement unworkable, since the time for the agency to make findings would be "constantly in flux, depending on when fee payments were received."

Plaintiffs contend that section 66001(d) requires five-year findings as to " 'that portion of the fund remaining unexpended, whether committed or uncommitted' " (§ 66001(d)(2)), regardless of when the fees were deposited.  Plaintiffs assert that the City recognized this standard when it belatedly issued its May 2020 five-year findings,

35

which addressed *all* of the in-lieu parking fees in the fund to that date without regard to when the City received the fees.

We agree with plaintiffs that the City's proposed interpretation of section 66001(d) is contrary to the plain language of the statute. The provision states, "For the fifth fiscal year following the first deposit into the account or fund, and every five years thereafter, the local agency shall make all of the following findings with respect to that portion of the account or fund remaining unexpended, whether committed or uncommitted . . . ." (§ 66001(d)(1).)

Assigning the language its ordinary meaning (*Dyna-Med*, *supra*, 43 Cal.3d at pp. 1386–1387), we decide the phrase "following the first deposit into the account or fund" (§ 66001(d)(1)) refers to the date that the first payment is made on a development fee into the fund or account following that fee's initial establishment—not the date of each subsequent payment of fees into the fund.

As stated in *Walker*, "when a local agency has not used all of a development fee *within five years of the date it started to collect the fee*, the agency must make findings that (1) identify the agency's purpose in holding the unexpended balance; (2) demonstrate a reasonable relationship between the unexpended balance and the purpose identified when the agency assessed the fee; (3) identify the sources and funding anticipated to complete any incomplete public improvement identified when the fee was established; and (4) designate the approximate date the agency expects that funding to be deposited in the account holding the unexpended balance." (*Walker*, *supra*, 239 Cal.App.4th at p. 1363, italics added, citing § 66001(d)(1).)

We do not agree with the City that the requirement to make findings "with respect to that portion of the account or fund remaining unexpended" (§ 66001(d)(1)) is limited to those fees that remain unexpended *following the fifth fiscal year after their initial deposit into the account or fund by a particular depositor*, because such a construction would be inconsistent with the statutory intent to require reporting at regular, five-year

36

interludes following the "first deposit" into the account or fund. (*Ibid*.) The Legislature's use of "account or fund" in subdivision (d)(1) of section 66001 is notably distinct from the language of subdivision (c), which directs the management of every fee received ("[u]pon receipt of *a fee subject to this section*, the local agency shall deposit, invest, account for, and expend the fees pursuant to [s]ection 66006" (§ 66001, subd. (c), italics added)).

Amendments to the Act in 1996 crystallized this distinction by changing the wording of section 66001(d) to its current form. Whereas the original language required findings "once each fiscal year with respect to any portion of the fee remaining unexpended or uncommitted in its account five or more years after deposit of the fee" (former § 66001(d), added by Stats. 1987, ch. 927, § 1), the revised language refers to findings "[f]or the fifth fiscal year following the first deposit into the *account or fund*, and every five years thereafter, . . . ." (§ 66001(d), added by Stats. 1996, ch. 569, § 1, italics added). The Legislature thus altered the relevant reference point for the five-year findings from individual fees paid to the account or fund as a whole.

The Legislative Counsel's Digest for the 1996 amendments confirmed that the changes "would revise the local agency's duties with respect to these unexpended fees, including requiring the local agency, for the 5th fiscal year following the first deposit into an account or fund, and every 5 years thereafter, to include specified information in findings relating to the funding *of a project*." (Legis. Counsel's Dig., Sen. Bill No. 1693 (1995-1996 Reg. Sess.) 6 Stats. 1996, ch. 569, italics added.)[9]

Our reading of the statute—that is, that the five-year finding requirement under section 66001(d)(1) applies to the fund itself rather than to the timing of the deposit of

---

[9] The bill summaries provided by the Legislative Counsel's Digest, printed as a preface to every bill considered by the Legislature, are not binding but "are entitled to great weight." (*Jones v. Lodge at Torrey Pines Partnership* (2008) 42 Cal.4th 1158, 1170; see also *Walker*, *supra*, 239 Cal.App.4th at p. 1364, fn. 3.)

individual fees—is rendered all the more reasonable when considered in connection with the Legislature's direction that a local agency maintain *all fees* received for a specified improvement in a single, designated fund or account. (§ 66006, subd. (a).)[10] Since fees received in connection with different development projects must be kept in a single fund or account "with the other fees for the improvement" (*ibid.*), the phrase "following the first deposit into the account or fund" (§ 66001(d)(1) can only refer to one date—the date the agency first began to collect that mitigation fee.

To the extent there is any uncertainty about whether subdivision (d)(1) of section 66001 was intended to apply, as the City contends, to more recently collected fees that have been in the fund for less than five years, we may consider "the consequences that will flow from a particular interpretation." (*Dyna-Med*, *supra*, 43 Cal.3d at p. 1387.) If the requirement to make five-year findings applied only to those fees in the fund that were deposited more than five years prior, the five-year findings would not accurately reflect "that portion *of the account or fund* remaining unexpended" (§ 66001(d)(1), italics added) five years after the first fee was collected, and every five years thereafter. Nor would it appear to satisfy the statutory purpose of requiring the local agency to " 'reexamine the necessity for the unexpended balance of the fee, as specified, every 5 years, and refund to then current owner or owners of the development project any unexpended portion of the fee for which need cannot be demonstrated at the time of this review, together with any accrued interest.' " (*Walker*, *supra*, 239 Cal.App.4th at

---

[10] Pursuant to section 66006, subdivision (a), "If a local agency requires the payment of a fee specified in subdivision (c) in connection with the approval of a development project, the local agency receiving the fee shall deposit it with the other fees for the improvement in a separate capital facilities account or fund in a manner to avoid any commingling of the fees with other revenues and funds of the local agency, except for temporary investments, and expend those fees solely for the purpose for which the fee was collected. Any interest income earned by moneys in the capital facilities account or fund shall also be deposited in that account or fund and shall be expended only for the purpose for which the fee was originally collected."

p. 1364, quoting Legis. Counsel's Dig., Assem. Bill No. 1600 (1987-1988 Reg. Sess.) 4 Stats. 1987, ch. 927, Summary Dig., p. 301.)[11] We note that our reading of the statute is also consistent with the five-year reports issued by the City with respect to the parking fund in January 2009 and in January 2014, which did not break out fees by date of deposit.

In summary, we hold that section 66001(d)(1) requires that a local agency make five-year findings for the fifth fiscal year after the first deposit of a fee into an account or fund and at five-year intervals thereafter. Five-year findings must report all unexpended fees in the account or fund, irrespective of the date at which the fees were deposited, as long as the account or fund during the five-year period contained a positive balance of unexpended fees.

We therefore reject the City's contention that it was not required to make five-year findings on the unexpended portion of the parking fund for the fiscal year that ended on June 30, 2018.

2. <u>The City's Belated Findings Do Not Satisfy the Act</u>

The City contends that even if it were required to make the five-year findings, it in fact satisfied that obligation when the city council adopted the May 2020 five-year findings. The City argues that a strict interpretation of the statutory deadline is not supported by the plain language or intent of the Mitigation Fee Act and is contrary to established case authority interpreting similar statutory deadlines as "directory" rather than "mandatory." The City further argues that even if the May 2020 five-year findings

---

[11] On our own motion, we further take judicial notice of the cognizable legislative history of the 1996 amendments to section 66001(d), reflecting the Legislature's consideration of changes to the reporting requirements (see, e.g., Sen. Housing & Land Use Com., com. on Sen. Bill No. 1693 (1995–1996 Reg. Sess.) as amended Apr. 9, 1996; Sen. Rules Com., Off. of Sen. Floor Analyses, Analysis of Sen. Bill No. 1693 (1995-1996 Reg. Sess.) as amended Aug. 28, 1996). (Evid. Code, §§ 452, subd. (c), 459, subd. (a); see *Kaufman & Broad Communities, Inc. v. Performance Plastering, Inc.* (2005) 133 Cal.App.4th 26, 29.)

were legally inadequate, the proper remedy would be to remand the findings to the city council for the opportunity to cure any legal deficiency before imposing the refund remedy.

Plaintiffs counter that the purpose of the statutory deadlines specified in sections 66001 and 66006 is to ensure timely public accountings and findings.  As such, plaintiffs point to the appellate court's determination in *Walker* that "a refund is the statutorily mandated remedy" for noncompliance with section 66001(d).  (*Walker*, *supra*, 239 Cal.App.4th at p. 1367, capitalization omitted.)  Plaintiffs urge this court to follow the reasoning of the *Walker* court, which after considering the statutory language and legislative history of the Act, concluded there was no support for a remand in light of the Mitigation Fee Act's "clear mandate" to refund the unexpended fees.  (*Id*. at p. 1369.)

Having considered the statutory language and relevant legal authorities, we agree with *Walker* that a refund is the statutorily mandated remedy for failing to make required five-year findings under section 66001(d).  (See *Walker*, *supra*, 239 Cal.App.4th at pp. 1367–1370.)  While the City is correct that courts routinely interpret similar statutory deadlines as "directory" rather than "mandatory," here the statute expressly specifies the remedy for an agency's failure to make the required findings.

As a general rule, "a ' "directory" or "mandatory" designation does not refer to whether a particular statutory requirement is "permissive" or "obligatory," but instead simply denotes whether the failure to comply with a particular procedural step will or will not have the effect of invalidating the governmental action to which the procedural requirement relates.' " (*California Correctional Peace Officers Assn. v. State Personnel Bd.* (1995) 10 Cal.4th 1133, 1145 (*California Correctional*).)  If noncompliance with a particular procedural step invalidates the governmental action, the requirement will be termed " 'mandatory' "; otherwise, "it is 'directory' only." (*Ibid*.; see *Edwards v. Steele* (1979) 25 Cal.3d 406, 410 (*Edwards*).)  As applied to time limits on government action,

40

"[t]ime limits are usually deemed to be directory unless the Legislature clearly expresses a contrary intent." (*California Correctional*, at p. 1145.) One test applied by California courts in ascertaining what effect to give a statute's timing requirement is whether " 'a consequence or penalty is provided for failure to do the act within the time commanded.' " (*Edwards*, at p. 410.) "Under this framework, 'statutes setting forth time frames for government action that do not include a self-executing consequence are almost universally construed as directory, rather than mandatory or jurisdictional.' " (*Tran v. County of Los Angeles* (2022) 74 Cal.App.5th 154, 166 (*Tran*).)

Applying those principles here, the Mitigation Fee Act provides that when five-year findings are required by section 66001(d)(1), they must be "made in connection with the public information required by" section 66006, subdivision (b). (§ 66001(d)(2).) That provision in turn directs that the local agency "shall" make certain information available to the public "within 180 days after the last day of each fiscal year." (§ 66006, subd. (b)(1).) Together, these provisions establish a statutory timeline for a local agency to make the required five-year findings "within 180 days after the last day of each fiscal year." (§§ 66006, subd. (b)(1), 66001(d)(2).) In establishing the 180-day deadline—a change enacted as part of the 1996 amendments to section 66001—the Legislature evinced an intent to require local agencies to comply with the statutory timeline, or be required to refund the unexpended fees in the fund or account.[12]

---

[12] Prior to establishment of the 180-day deadline, a local agency had 60 days after the close of the fiscal year to make public the specified information. (See Legis. Counsel's Dig., Sen. Bill No. 1693 (1995-1996 Reg. Sess.) 6 Stats. 1996, ch. 569.) Legislative committee documents discussing the change acknowledge that the then-proposed amendments would increase the reporting duties of local agencies with respect to development fees but also extend the deadline to comply. (See, e.g., Sen. Rules Com., Off. of Sen. Floor Analyses, 3d reading analysis of Sen. Bill No. 1693 (1995-1996 Reg. Sess.) as amended May 7, 1996 [noting the bill expands the reporting requirements related to development fee funds, and that "[t]he additional information may take more time for local agencies to comply but this bill allows six months to complete the reporting

In the absence of a clear contrary intent, such a statutory time limit would typically be deemed directory. (*California Correctional*, *supra*, 10 Cal.4th at p. 1145; *Edwards*, *supra*, 25 Cal.3d at p. 410.) However, section 66001(d)(2) states that "[i]f the findings are not made as required by this subdivision, the local agency shall refund the moneys in the account or fund as provided in subdivision (e)."

This provision unequivocally imposes a direct consequence for an agency's failure to make five-year findings "as required by this subdivision." (§ 66001(d)(2).) That consequence is to require the agency to refund the unexpended portion of the fees in the account or fund to the record owner(s) of the development project(s). (*Id.*, subds. (d)(2), (e).) Thus, contrary to the City's claim that there is no government "action" that is invalidated if it fails to make the required findings, the action being invalidated is the agency's continued retention of the unexpended balance of the fees in the fund after having failed to make the required findings for that five-year period. Moreover, to the extent the consequence imposed by the statute for failure to make required five-year findings applies directly, without further statutory requirements, it is tantamount to a " 'self-executing consequence' " (*Tran*, *supra*, 74 Cal.App.5th at p. 166), and the City's reference to "similar directory deadlines across all areas of state law" is unavailing.

Nor do the distinguishable facts in *Walker* render it inapposite to our analysis here. As the City points out, *Walker* involved a longstanding "beach parking impact fee" (capitalization omitted) which the City of San Clemente continued to collect even after several beach parking studies confirmed that San Clemente had adequate beach parking. (*Walker*, *supra*, 239 Cal.App.4th at p. 1361.) The trial court entered judgment against San Clemente after a bench trial on the plaintiffs' action for declaratory and mandamus relief and ordered the city to refund the unexpended beach parking impact fees based in part on its failure to make the required five-year findings. (*Id.* at p. 1362.)

requirements"]; Sen. Housing & Land Use Com., com. on Sen. Bill No. 1693 (1995-1996 Reg. Sess.) as amended Apr. 9, 1996 [same].)

42

On appeal, the *Walker* court agreed that the five-year findings were inadequate. (*Walker*, *supra*, 239 Cal.App.4th at p. 1367.) It furthermore rejected San Clemente's argument that the trial court should have remanded the matter for the city "to make new findings correcting the 'technical deficienc[ies]' in the [] five-year findings rather than requiring the [c]ity to forfeit the unexpended impact fees that [it] properly had collected." (*Ibid*.)

The court explained that the language of section 66001(d) and related legislative history confirm that "the Legislature intended that a local agency must refund unexpended development fees if the agency fails to make the required five-year findings." (*Walker*, *supra*, 239 Cal.App.4th at p. 1368.) The court reasoned that although case authority in other contexts might support remand for a government agency to correct deficient findings, that authority does not permit the court to "disregard" the Act's "clear mandate" requiring the city "to make findings to support its quasi-legislative decision to retain the unexpended" fees and further "specif[ying] the remedy for the [c]ity's failure to do so." (*Id*. at p. 1369.)

We recognize that *Walker* is factually distinguishable and that the instant situation does not mirror the extreme facts of that case, in which the local agency apparently had no intention of using the fees collected for their intended purpose. (Cf. *Walker*, *supra*, 239 Cal.App.4th at pp. 1360–1361.) Even so, we reject the City's contention that the decision in *Walker* was driven by those facts; instead, the statutory language and purpose dictated the court's analysis of the statutory remedy.

Here, like in *Walker*, the City has pointed to nothing in the statute's language or purpose that would negate or mitigate the unambiguous refund provision. The City argues that the Act does not state that the five-year findings required by section 66001(d) have to be adopted "timely." This ignores the language specifying "If the findings are not made *as required by this subdivision*, the local agency *shall refund* the moneys in the account or fund as provided in subdivision (e)." (§ 66001(d)(2), italics added.) Since the

43

findings required by subdivision (d) of section 66001 must be made "in connection with" (§ 66001(d)(2)) the annual public information on the 180-day timeline after the end of the fiscal year (§ 66006, subd. (b)(1)) and are intended to require any agency to regularly reexamine its basis for retaining the unexpended fees in the fund, we decide there is no statutory support to exempt untimely five-year findings from the refund remedy or authorize a remand to supplement untimely findings on that basis.

It is undisputed that more than 180 days had elapsed between the fiscal year that ended on June 30, 2018, and the City's May 2020 five-year findings. Therefore, those findings were untimely and noncompliant with the requirements of the subdivision. (§§ 66001(d)(2), 66006, subd. (b)(1).) We decide that the May 2020 five-year findings " ' "failed to conform to procedures required by law" ' " (*Walker*, *supra*, 239 Cal.App.4th at p. 1362; *American Coatings*, *supra*, 54 Cal.4th at p. 461), rendering the unexpended portion of the parking fund subject to the refund provision of section 66001(d)(2).

F. *Harmless Error*

There remains the City's argument that, notwithstanding any legal deficiency (including untimeliness) in the May 2020 five-year findings, a refund of the in-lieu parking fees is not appropriate under the so-called "harmless error" provision of the Government Code. (§ 65010(b).) The City contends that under section 65010(b), the court cannot invalidate the City's action (or omission) based on its failure to make required findings under the Act unless plaintiffs demonstrate that (1) the error was prejudicial, (2) they suffered substantial injury from the error, and (3) a different result would have been probable had the error not occurred—a showing plaintiffs have not tried to make here. We disagree with the City and decide that, given the mandatory nature of the refund provision, the prejudice standard of section 65010(b) does not apply to section 66001(d).

Whether section 65010(b) applies to section 66001(d) is a question of law subject to our independent review. (*Sierra Pacific*, *supra*, 140 Cal.App.4th at p. 1505.) Section

44

65010 is "a general statutory directive to courts to apply the doctrine of harmless error to agency proceedings under title 7 of the Government Code." (*El Dorado*, *supra*, 42 Cal.App.5th at p. 629.) Title 7 of the Government Code has three divisions: "Planning and Zoning" (§ 65000 et seq.), "Subdivisions" (§ 66410 et seq.), and "Official Maps" (§ 66499.50 et seq.). (*El Dorado*, at p. 628.) The Planning and Zoning division of title 7 contains 12 chapters, including chapter one ("General Provisions") encompassing the harmless error provision (§ 65010(b)), and chapters six through nine encompassing the Mitigation Fee Act (§ 66000 et seq.). Structurally, the Mitigation Fee Act thus comes under the same title (title 7) and division (Division 1, Planning and Zoning), as section 65010.

Turning to the language of the statute, section 65010(b) provides that a court may not set aside or hold invalid the "action or inaction" of a public agency or its legislative body based on an error or omission in "any matter pertaining to . . . findings, . . . reports, recommendations, appeals, or any matters of procedure subject to this title, unless the court finds that the error was prejudicial and that the party complaining or appealing suffered substantial injury from that error and that a different result would have been probable if the error had not occurred." In short, section 65010(b) requires a finding of "prejudice, substantial injury to the complaining party, and probability of a different result before a court can overturn the decision of an administrative agency based on procedural errors in zoning and planning matters." (*Environmental Defense Project of Sierra County v. County of Sierra* (2008) 158 Cal.App.4th 877, 887 (*Environmental Defense Project*).)

The City contends that by its express terms, section 65010 applies to findings and procedures under the Mitigation Fee Act, since the city council's adoption of findings under the Act is a " 'matter[] of procedure subject to this title' " (title 7 of the Government Code). Plaintiffs maintain, however, that an action (as in this case) to *enforce* a statutorily imposed mandate to refund fees under section 66001(d), is not

45

subject to section 65010(b), which applies when a party seeks to "*h[o]ld invalid* or *set aside*" agency action on the ground of error as to a matter of procedure subject to title 7. (§ 65010(b), italics added.)  Plaintiffs argue that "the relatively few cases which have applied [section] 65010(b), and its predecessor" (former § 65801) illustrate the limited scope of its application, which was intended to curtail judicial invalidation of zoning decisions for non-prejudicial, technical, or procedural errors.  Plaintiffs further maintain that applying the harmless error standard in this context would defeat the statutory purpose behind the Legislature's express specification in section 66001(d) of a refund remedy for failure to make five-year findings.

In evaluating these arguments, we are guided by the standard principles of statutory interpretation.  (See *ante*, pt. II.C.)  " 'It is axiomatic that in the interpretation of a statute where the language is clear, its plain meaning should be followed.' " (*Security Pacific National Bank v. Wozab* (1990) 51 Cal.3d 991, 998.)  Where two statutes are to be construed, " 'they "must be read together and so construed as to give effect, when possible, to all the provisions thereof." ' " (*Mejia*, *supra*, 31 Cal.4th at p. 663.) " '[E]very statute should be construed with reference to the whole system of law of which it is a part, so that all may be harmonized and have effect.' " (*Ibid*.)

Applying these principles to our review of sections 65010(b) and 66001(d), we decide that section 65010(b) does not inject a prejudice standard into the refund determination under section 66001(d).

Courts have generally described section 65010(b) (formerly section 65801) as "a 'curative statute' enacted by the Legislature for the purpose of 'terminating [the] recurrence of judicial decisions which had invalidated local zoning proceedings for technical procedural omissions.' " (*Rialto Citizens for Responsible Growth v. City of Rialto* (2012) 208 Cal.App.4th 899, 921 (*Rialto Citizens*); *El Dorado*, *supra*, 42 Cal.App.5th at p. 629; see *Taschner v. City Council* (1973) 31 Cal.App.3d 48, 62 [describing the legislative objective of former § 65801 "to correct the notion . . . that any

46

minor deviation from the mode prescribed by the State Zoning Law is a jurisdictional error which is fatal to the zoning action"], disapproved on another ground by *Associated Home Builders etc., Inc. v. City of Livermore* (1976) 18 Cal.3d 582, 596, fn. 14.)

Those reported cases that have applied section 65010(b) (and its predecessor, § 65801) have reflected this purpose in relation to planning and zoning law violations. (See, e.g., *Rialto Citizens*, *supra*, 208 Cal.App.4th at pp. 916–923 [assessing prejudice in relation to city's defective compliance with requirements pertaining to general plan amendments and development agreement approvals]; *Tran*, *supra*, 74 Cal.App.5th at pp. 172–173 [applying § 65010(b) to board of supervisors' untimely decision to impose limits on applicant's conditional use permit]; *Sounhein v. City of San Dimas* (1992) 11 Cal.App.4th 1255, 1260 [deciding that city's failure to provide notice and hearing procedures in connection with the adoption of a zoning ban on second unit accessory apartments was not harmless, given the flawed public process, rendering the ordinance void].)

Other cases have declined to apply section 65010(b) where the remedy sought was inconsistent with the statutory scope of relief. Thus, the court in *Environmental Defense* reasoned that a plaintiff seeking declaratory relief on the proper interpretation of state zoning law did not need to prove prejudice, since section 65010(b) "applies only when a party is seeking to have a court set aside or declare invalid an 'action, inaction, or recommendation.' " (*Environmental Defense*, *supra*, 158 Cal.App.4th at p. 887.)

Similar reasoning applied in *El Dorado*—notably, the only reported decision addressing an attempt to invoke section 65010(b) in litigation seeking to enforce the Mitigation Fee Act's refund remedy for failure to make five-year findings under section 66001(d). In *El Dorado*, the appellate court recognized section 65010 as "a general statutory directive to courts to apply the doctrine of harmless error to agency proceedings under title 7 of the Government Code" but rejected its application to the action to recover unexpended development impact fees under section 66001. (*El Dorado*, *supra*, 42

47

Cal.App.5th at p. 629.) The *El Dorado* court reasoned that section 65010(b) "does not purport to require a litigant to plead harmless error in seeking relief when an agency fails to comply with an express statutory directive to make findings, such as in section 66001." (*Ibid*.) The court also observed it is unclear how the requirement to establish prejudice under section 65010 comports with the refund mechanism of section 66001 "when it is the failure itself [to make the prescribed five year findings] that entitles the current owner to the refund without any further showing of injury." (*Ibid*.)

We agree with the court's reasoning on this issue in *El Dorado*. It is apparent from section 65010(b)'s reference to "any matters of procedure subject to this title" that the harmless error standard applies broadly with respect to procedural matters subject to title 7 of the Government Code. The Mitigation Fee Act, which is situated within title 7, meets that general criterion.

The language of section 65010(b), however, is more specific in that it refers to determinations of whether an "action, inaction, or recommendation by any public agency or its legislative body . . . on any matter subject to this title shall be held invalid or set aside by any court on the ground of . . . any error, irregularity, informality, neglect, or omission (hereafter, error) as to any matter pertaining to petitions, applications, notices, findings, records, hearings, reports, recommendations, appeals, or any matters of procedure subject to this title." (§ 65010(b).) As we explained in our statute of limitations analysis (see *ante*, pt. II.D.), plaintiffs' action here does not seek to hold invalid or set aside the City's findings, or any other action by the City under the Act (apart from its continued retention of that portion of unexpended fees in the fund as of the required five-year findings). Rather, plaintiffs seek to enforce the refund requirement for the City's failure to make the statutorily required five-year findings. We decline to interpret section 65010(b) more broadly than it is written and agree with plaintiffs that section 65010(b) is not applicable to the circumstances underlying this appeal.

48

Furthermore, applying the prejudice standard of section 65010(b) would be incongruous with the standard for a refund of unexpended impact fees under section 66001(d). By the terms of the statute, a refund is the mandated remedy for an agency's failure to make five-year findings when required. (*Walker*, *supra*, 239 Cal.App.4th at p. 1367.) The refund mechanism is premised on agency noncompliance with statutory perquisites for the continued retention of the fees, not on any independent finding of prejudice or injury to the owner of the property whose fees have been retained. "When [five year] findings are required by this subdivision, they shall be made in connection with the public information required by subdivision (b) of [s]ection 66006. . . . If the findings are not made as required by this subdivision, the local agency *shall refund the moneys in the account or fund* as provided in subdivision (e)." (§ 66001(d)(2), italics added.) This language leaves no doubt of the Legislature's intent to exact compliance with the five-year findings requirement by mandating a refund of the unexpended fees if the agency does not make the required findings. The if-then nature of the statutory mandate (*if* the agency fails to make the required findings, *then* it must refund the unused fees) is consistent with the manifest purpose of the statute " 'to guard against unjustified fee retention' by a local agency.' " (*Walker*, at p. 1363.)

We recognize that the prescribed remedy for an agency that has not made the required five-year findings to "refund the moneys in the account or fund" (§ 66001(d)(2)) might be viewed as severe where the error or omission in making the required findings could be perceived as slight or emendable. However, such speculation about the preferred policy outcomes or possible mitigators goes beyond our role in interpreting the statutes. " 'This court has no power to rewrite the statute so as to make it conform to a presumed intention which is not expressed.' " (*California Teachers Assn. v. Governing Bd. of Rialto Unified School Dist.* (1997) 14 Cal.4th 627, 633.)

Moreover, "[w]e will not interpret a statute in a way that frustrates its fundamental purpose." (*In re M.G.* (2022) 86 Cal.App.5th 1004, 1010.) We agree with plaintiffs that

to interpret the findings required by section 65010(b) (namely, prejudicial error, substantial injury, and a different, probable result had the error not occurred) as applicable to a refund action under section 66001(d)(2) would frustrate the design and manifest purpose of the refund mechanism. By construing section 65010(b) more narrowly, we harmonize and give effect to each statute (*Mejia*, *supra*, 31 Cal.4th at p. 663) and give precedence to the more specific over general provision (*id*. at p. 666; see Code Civ. Proc., § 1859). Accordingly, we conclude that section 65010(b)'s general standard for invalidating or setting aside agency action (or inaction) for procedural error under the Planning and Zoning Law does not prevail over the refund remedy explicitly prescribed in section 66001(d)(2).

### G. *Complaint Causes of Action*

Having decided that plaintiffs have established a statutory right to relief under the Mitigation Fee Act, we need not address their alternate ground for equitable relief based on principles of equitable restitution as set out in the third cause of action.[13] Regarding plaintiffs' second cause of action for declaratory and injunctive relief, we conclude that plaintiffs have demonstrated an entitlement to declaratory and injunctive relief, with respect to the applicability of the Mitigation Fee Act to plaintiffs' payment of in-lieu parking fees and to plaintiffs' entitlement to a refund of those unexpended fees, pursuant to section 66001(d)(2).

### III.  DISPOSITION

The judgment is reversed. On remand, the trial court is directed to enter a new judgment (1) granting the mandate petition directing the City of Palo Alto to comply with the refund requirement as set forth in Government Code section 66001, subdivision

---

[13] To the extent the request for equitable relief is duplicative of the relief sought in the mandate petition, and being that "restitution is a remedy and not a freestanding cause of action" (*Reid v. City of San Diego* (2018) 24 Cal.App.5th 343, 362), we direct the trial court to dismiss the third cause of action for equitable relief and restitution.

(d)(2), (2) granting the declaratory and injunctive relief cause of action regarding the application of Government Code section 66001, to the in-lieu parking fees paid by plaintiffs,[14] and (3) dismissing the equitable relief and restitution cause of action.

Plaintiffs are entitled to recover their reasonable costs on appeal. (Cal. Rules of Court, rule 8.278(a)(5).)

---

[14] The amount of unexpended fees in the parking fund attributable to plaintiffs (based on their December 2013 payment of in-lieu parking fees) and subject to the refund provision is not before us. We therefore leave determination of this amount to the trial court.

51

_____
                                Danner, J.

WE CONCUR:

_____
Bamattre-Manoukian, Acting P.J.

_____
Wilson, J.

**H049425**
*Hamilton and High LLC et al. v. City of Palo Alto et al.*

| Trial Court: | Santa Clara County Superior Court No. 20CV366967 |
|---|---|
| Trial Judge: | Hon. Cynthia C. Lie |
| Counsel for Plaintiffs and Appellants Hamilton and High LLC, The Keenan Family Trust and Charles J. Keenan: | David P. Lanferman Rutan & Tucker, LLP |
| Counsel for Defendants and Respondents City of Palo Alto and City Council of the City of Palo Alto: | Rick W. Jarvis Jarvis Fay LLP Molly Stump Terence Howzell Office of the City Attorney, City of Palo Alto |

**H049425**
*Hamilton and High LLC et al. v. City of Palo Alto et al.*